COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Annunziata and
          Bumgardner
Argued at Alexandria, Virginia


PETER FELIX MATTHEWS
                                        OPINION BY
v.    Record No. 0678-97-4    JUDGE ROSEMARIE ANNUNZIATA
                                      FEBRUARY 24, 1998
SUZANN GAIL WILSON MATTHEWS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert W. Wooldridge, Jr., Judge

Robert E. Shoun (Peter M. Fitzner; Shoun &
Bach, P.C., on briefs), for appellant.

Dexter S. Odin (J. Patrick McConnell;
Elizabeth L. Salans; Odin, Feldman &
Pittleman, P.C., on brief), for appellee.


Peter Felix Matthews (husband) appeals the order of the trial court determining the equitable distribution award in his divorce from Suzann Gail Wilson Matthews (wife). Husband contends the trial court erred in failing to give proper weight to husband's contributions to the marriage, in relying on improper factors, and in failing to give weight to wife's unilateral decision to end the marriage when determining the equitable distribution award. Wife contends on cross-appeal that the trial court erred in awarding husband most of the assets acquired after the date of separation. We find no error and affirm.

Husband became interested in commodities futures trading in 1972. At the time, husband was studying statistics and completed his Ph.D. course work in 1974. The parties met in February 1975,

and were married later that year.  At the time of the marriage, neither party was employed; the parties had a few assets but, also had substantial debts.

At the time of the marriage, husband had begun trading in commodities futures but experienced gains and losses which maintained the parties' trading account at roughly $5,000.  The pattern of gains and losses continued through 1979, although by 1979 the parties were losing and gaining hundreds of thousands of dollars.

In 1980, the parties formed Quantec, Inc.  Wife handled the incorporation of Quantec, performed research for the company, and owned one-half of the stock.  Quantec performed government subcontracting work but did not engage in commodities trading or giving trading advice.  The parties continued to trade commodities while operating Quantec.

In 1980, husband and Larry Hite agreed to begin a joint venture using a statistical approach to trading commodities futures.  During the first two years of the operation, wife performed historical research on commodities prices, compiled market data, and traded commodities according to trading rules established by husband.  Wife was involved in the daily operation of trading and record-keeping until 1984, when her functions were duplicated by computers.  Although wife did not play a role in developing the computer programs, her market research provided data used in the programs.

In 1984, husband and Hite entered into a partnership, known as MINT, with E.D. & F. Man Group, a London-based financial institution, to trade commodities using the statistical approach developed by husband and Hite. Wife assisted husband in drafting and negotiating the partnership agreement. Husband's interest in the MINT partnership was represented by Peter Matthews, Inc. (PMI), a corporation wholly owned by husband. The parties received roughly equivalent salaries from PMI through 1988, after which time for tax reasons PMI stopped paying wife a salary. Wife handled tax, corporate, financial planning, legal, and other issues in the daily operations of MINT and PMI but did not play a role in the formulation of trading strategy. Wife was the primary liaison with the partnerships' account and tax planner, as well as their attorney, until the early 1990's. Several witnesses who worked with MINT described the parties as a team working together to achieve the goals of MINT.

MINT experienced extraordinary growth during the 1980's and, at one point, managed over a billion dollars in assets. As shareholder, husband received millions in profit from PMI. The parties' child, Lucy, was born on June 30, 1989. Husband became an internationally respected commodities trader. Wife often travelled with husband on business trips. At the same time, wife assumed primary responsibility for the household affairs and the care of Lucy.

In 1992, wife informed husband that she wanted a divorce.

In 1993, wife explained that she felt husband was not emotionally supporting her and continued to want a divorce. Husband and wife lived together until March 1994, when husband moved out of the marital home. Husband filed a bill of complaint for divorce on February 13, 1996, and wife filed a cross-bill of complaint on March 20, 1996.

A commissioner took evidence and in a written report addressed the issue of the breakup of the marriage. The commissioner detailed the parties' contributions and roles in the relationship and concluded that neither party should bear disproportionate blame for the breakup of the marriage. Neither party filed exceptions to the commissioner's report.

After hearing evidence, the trial court concluded that wife had played a significant role in the parties' business success in the early 1980's but that her role diminished after the formation of MINT. It noted:

> As between the parties, Mr. Matthews played a more substantive role than Mrs. Matthews in the initial start-up years of the commodities endeavors and played a far more significant role in the marketing and success of MINT. . . . [I]t is clear that the success of MINT was attributable to a brilliant idea, perseverance, and hard work in implementation, hard work in arranging funding, and persistence and skill in marketing. Mrs. Matthews played a greater role in that lengthy process than most persons do in their spouse's business. She played an active role in the inception of the parties' business endeavors and a much decreased one as the business endeavor flourished. But her role pales compared to that of Mr. Matthews.

4

The court found that the parties' income between 1985 and 1995 had exceeded $80 million and that the parties had approximately $50.7 million in assets to be divided between them.

In its letter opinion, the trial court stated that it considered the factors enumerated in Code § 20-107.3(E). Specifically, the court concluded that the circumstances and factors contributing to the dissolution of the marriage were not significant to the division of property, that the parties had "considered their marital property to be equally owned and accessible, regardless of the fact that Mr. Matthews principally generated it," and that wife had played a greater role than husband in monitoring the parties' investments and making non-monetary contributions to the family. The court awarded a total of approximately $22.1 million to wife and approximately $28.6 million to husband. In this division, husband received 100% of the parties' interest in PMI and MINT and approximately 56.4% of the total assets. The court stated that it had "taken into account Mr. Matthews' contributions to the acquisition of the marital property of the parties following the separation, and have allocated an appropriate share to him based on that factor."

On appeal, we view the evidence in the light most favorable to the party prevailing below. Wagner v. Wagner, 16 Va. App. 529, 532, 431 S.E.2d 77, 79 (1993) (en banc). The determination of an equitable distribution award rests within the sound discretion of the trial court and will not be reversed unless

plainly wrong or without evidence to support it. <u>McDavid v. McDavid</u>, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing <u>Srinivasan v. Srinivasan</u>, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)). "[A]s long as the trial court considers all the factors, it is at the trial court's discretion to determine what weight to give each factor when making the equitable distribution award." <u>O'Loughlin v. O'Loughlin</u>, 20 Va. App. 522, 527, 458 S.E.2d 323, 325 (1995) (citing <u>Booth v. Booth</u>, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988)).

I.

Husband's Contributions to the Marriage

Husband first contends the trial court erred in awarding wife $22.1 million of $50.7 million in marital assets, arguing that his "[s]uperior" contributions to the marital property, specifically, his disproportionate contributions to the parties' commodities futures trading business, mandate a "[s]ubstantially [d]isparate" award in his favor.

In its letter opinion, the trial court summarized the evidence as showing that wife played a significant role in the parties' business during the first ten years of the marriage. Conversely, the trial court found that wife played a diminished role in the success of MINT and that "her role pales compared to that of Mr. Matthews." The court found it significant that the parties viewed their marriage as "an equal sharing of the fruits of the marriage, regardless of which spouse generated the

6

family's income."  The court also observed that wife had played a primary role in monitoring the family's investments and making non-monetary contributions to the family.

Husband does not challenge the court's findings but claims the court's award of approximately 56.4% of the marital estate to him was inadequate.  In his brief, husband catalogues his primary and extensive role in the extraordinary success of MINT and argues that the trial court should have exercised its discretion to award him a larger proportion of the marital estate.

As husband notes, Virginia law does not establish a presumption of equal distribution of marital assets.  Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986).  It is within the discretion of the court to make an equal division of assets, see Bentz v. Bentz, 2 Va. App. 486, 490, 345 S.E.2d 773, 775 (1986), or to make a substantially disparate division of assets, see Aster v. Gross, 7 Va. App. 1, 8, 371 S.E.2d 833, 837 (1988), as the factors outlined in Code § 20-107.3(E) require.  See Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 576 (1992).  In determining an equitable distribution award, the trial court must make "delicate and difficult judgments," Bentz, 2 Va. App. at 489, 345 S.E.2d at 774, and "weigh[] the many considerations and circumstances that are presented in each case."  Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990).  It is precisely "because rights and interests in marital property are difficult to determine and evaluate and competing

7

equities are difficult to reconcile," that "the chancellor is necessarily vested with broad discretion in the discharge of the duties the statute imposes." Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

In support of his argument for a greater share of the marital estate, husband cites cases upholding disparate equitable distribution awards. See Gottlieb v. Gottlieb, 19 Va. App. 77, 448 S.E.2d 666 (1994); Srinivasan v. Srinivasan, 10 Va. App. 728, 396 S.E.2d 675 (1990); Zipf v. Zipf, 8 Va. App. 387, 382 S.E.2d 263 (1989). Husband's reliance on these cases is misplaced. Gottlieb, Zipf, and Srinivasan demonstrate that a disparate award is permissible if the trial court properly exercises its discretion; they do not indicate that a trial court must fashion a disparate award if one of the parties has made substantially larger monetary contributions to the marital estate than the other. Gottlieb, 19 Va. App. at 95, 448 S.E.2d at 677; Zipf, 8 Va. App. at 392-93, 382 S.E.2d at 266; Srinivasan, 10 Va. App. at 733, 396 S.E.2d at 678. Indeed, in Zipf, 8 Va. App. at 393 n.2, 382 S.E.2d at 266 n.2, we noted:

> Nothing herein should be construed, however, to sanction a disproportionate division of assets in favor of one party simply because that party has been primarily responsible for the development of the marital assets. The non-monetary contributions of each party, as well as the other factors specified in Code § 20-107.3(E) must be considered.

In this case, the trial court was required to balance husband's greater monetary contributions in the second half of

8

the marriage against wife's substantial contributions to the family business in the first half of the marriage and wife's superior non-monetary contributions throughout the marriage. While the value of the marital estate may be characterized as "exceptional," we cannot say that the evidence relevant to the trial court's equitable distribution award presents the "exceptional circumstances" which would warrant this Court's interference with the exercise of the trial court's discretion. Aster, 7 Va. App. at 8, 371 S.E.2d at 837.

## II.

### Consideration of Factors

Husband also argues the trial court considered improper factors in determining the equitable distribution award, specifically that the parties held their property jointly during the marriage. In addition to the enumerated factors, Code § 20-107.3(E)(10) requires the trial court to consider "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." In its letter opinion, the court wrote,

> [s]ignificantly, Mr. and Mrs. Matthews both testified that throughout their marriage they considered their marital property to be equally owned and accessible, regardless of the fact that Mr. Matthews principally generated it. Throughout the marriage, all of the parties' assets were jointly titled or kept in joint accounts. Both Mr. and Mrs. Matthews testified that during the marriage, there was no effort to designate some assets as Mr. Matthews' and others as Mrs. Matthews'. Their notion of marriage was an equal sharing of the fruits of their labor,

regardless of which spouse generated the family's income.

Citing <u>Westbrook v. Westbrook</u>, 5 Va. App. 446, 364 S.E.2d 523 (1988),[1] husband argues the court could not consider the parties' "notion of marriage" or the title of their assets. Husband's arguments fail to consider the language of Code § 20-107.3(E)(10), which requires the court to consider "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." The court considered the parties' conception of marriage and the joint title of their assets as evidence of the parties' treatment of income from PMI and other sources; the court treated this evidence as one factor among many in determining the equitable distribution award.

Equitable distribution in Virginia, as codified in Code § 20-107.3, "is predicated on the philosophy that marriage represents an economic partnership requiring that upon dissolution each partner should receive a fair proportion of the property accumulated during marriage." <u>Roane v. Roane</u>, 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991) (emphasis omitted). We find that by its consideration of the parties' "notion of

---

[1]In <u>Westbrook</u>, 5 Va. App. at 455-57, 364 S.E.2d at 529-30, the husband argued the court should have struck the wife's testimony because she had committed perjury and, thus, had not come to the chancery court with "clean hands." We noted that, "[n]either the equitable maxims nor perjury are included among the factors to be considered" in Code § 20-107.3(E), but went on to hold that the subject of the perjury, the wife's adultery, was a permissible consideration. <u>Id.</u> at 457, 364 S.E.2d at 530.

marriage" and the joint title of their property, the court sought to further the announced purpose of the statute and that consideration of such evidence is permitted under the statutory "catchall" factor.[2]  See Smith v. Smith, 331 S.E.2d 682, 686 (N.C. 1985) (holding that catchall factor is to be construed consistent with the purpose of the enumerated factors); cf. White v. White, 324 S.E.2d 829, 832 (N.C. 1985) (explaining that courts have broad discretion under the catchall factor); Booth v. Booth, 7 Va. App. 22, 28-29, 371 S.E.2d 569, 573 (1988) (holding that court may consider waste of marital assets under catchall factor).

### III.

### Dissolution of the Marriage

Husband's final argument is that the court erred in finding that the circumstances and factors leading to the dissolution of the marriage were not a significant factor in the equitable distribution.  Specifically, husband contends he should have been allocated approximately $10.5 million for his net earnings from 1992, when wife first asked for a divorce, through the date of separation.

After taking evidence on the circumstances and factors

---

[2]The catchall factor, however, is not unlimited in scope.  We have held that courts may not use the catchall factor to defeat the statutory distinction between equitable distribution and spousal support.  See Reid v. Reid, 12 Va. App. 1218, 1234, 409 S.E.2d 155, 164 (1991); Reid v. Reid, 7 Va. App. 553, 564, 375 S.E.2d 533, 539 (1989).  This concern is not implicated here.

11

leading to the marital breakdown, the commissioner wrote at length about the causes of the dissolution of the marriage. The commissioner wrote: "This marriage gradually broke down over a long period of time because it was not properly nurtured by either party." The commissioner noted that neither party acted to save the relationship and concluded, as follows:

> It takes two to make a marriage and in this case it took two to end it. Accordingly, I do not place the blame for the breakup of this marriage on either party, but believe their separation was due to the parties drifting apart as a result of their different personalities, their desired future goals in life, and their failure to communicate with each other.

The court found "that the circumstances and factors present contributing to the dissolution of the marriage are not significant for purposes of equitable distribution."

Husband is barred from raising this issue on appeal because he filed no exceptions to the commissioner's report. A party who believes the commissioner's report to be in error must except to the perceived error and "[i]t is too late to do so for the first time on appeal." McLaughlin v. McLaughlin, 2 Va. App. 463, 470, 346 S.E.2d 535, 539 (1986) (citing Cralle v. Cralle, 84 Va. 198, 201, 6 S.E. 12, 13 (1887)).

IV.

Post-Separation Acquisitions

Wife argues on cross-appeal that the trial court erred in awarding husband the majority of the assets acquired subsequent

12

to the parties' separation. Specifically, she argues that the assets acquired after separation with funds from PMI and the sale of SSL/Chardant were not acquired as a result of any effort on husband's part but were merely distributions from marital holdings.

Code § 20-107.3(E) requires the court to consider both the contributions of each party to the acquisition of marital property as well as the timing and manner of its acquisition. In its letter opinion, the trial court explained that it had "taken into account Mr. Matthews' contributions to the acquisition of the marital property of the parties following the separation, and have allocated an appropriate share to him based on that factor." Because the post-separation distributions were generated by marital property, the court properly considered the distributions as marital property, and husband does not argue otherwise. See Rowe v. Rowe, 24 Va. App. 123, 143-44, 480 S.E.2d 760, 769-70 (1997); Dietz v. Dietz, 17 Va. App. 203, 210, 436 S.E.2d 463, 468 (1993).

"SSL" was begun in 1983 and bought shares in Chardant, a "set fund" established in 1986 or 1987. Husband received a final distribution from SSL/Chardant after the date of separation and continued to receive funds from PMI after the parties' separation. Husband acquired some assets after the date of separation with funds distributed from SSL/Chardant and PMI, including vacation property, mutual funds, startup company

13

investments, and cars, worth a total of $3,554,050. As part of its equitable distribution award, the court allocated most of these assets to husband, although it did not identify the assets as obtained from the PMI funds and the proceeds of the sale of SSL/Chardant.

With respect to the PMI distributions, we find the evidence in the record supports the court's finding that husband expended significant effort on behalf of MINT after the separation, especially after becoming CEO of MINT in November 1994. Since 1994, MINT's performance has declined, and husband has been active in attempting to keep MINT's large international customers.

Addressing the distribution of funds from SSL/Chardant, we find that the record does not support wife's argument that the court awarded husband a larger award because it believed husband was individually responsible for generating the funds obtained from the sale of SSL/Chardant; indeed, the court's award to wife of a car acquired with SSL/Chardant funds contradicts such a suggestion. Wife, as the party alleging reversible error, bears the burden to show that such error occurred. D'Agnese v. D'Agnese, 22 Va. App. 147, 153, 468 S.E.2d 140, 143 (1996) (citing Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992)). We find that the court allocated the post-separation assets, like the pre-separation assets, after considering the Code § 20-107.3(E) factors. In the absence of

14

evidence in the record that the court awarded husband the assets purchased with the proceeds of the SSL/Chardant funds because husband had "earned" these funds, we find that the court did not abuse its discretion.

For the foregoing reasons, we affirm.

<u>Affirmed.</u>