COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


PATRICK L. OVERBEY

                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1395-00-3          JUDGE ROBERT P. FRANK
                                           APRIL 3, 2001
PATRICIA K. OVERBEY


            FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                      Thomas H. Wood, Judge

         Frankie C. Coyner for appellant.

         No brief or argument for appellee.


     Patrick L. Overbey (husband) contends the trial court erred

in awarding Patricia K. Overbey (wife) forty-five percent of his

pension, claiming:  1) wife's incarceration for embezzlement was

an economic fault that impacted the marital estate, 2) the trial

court did not give him adequate credit for his curtailment of

wife's pro rata share of marital debts, and 3) the trial court

should have awarded him a credit for the funds he paid to support

the parties' children during wife's incarceration.  Finding no

error, we affirm the trial court.

_____

         * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.  BACKGROUND

Husband and wife were married on August 24, 1974, and had three children.  At the time of the parties' separation, two of the children, Christopher and Robert, were not emancipated.

Both husband and wife worked during the marriage, frequently working a full-time job in addition to a part-time job.  Both husband and wife pooled their incomes.  During the marriage, husband and wife shared childcare responsibilities.

On January 5, 1995, wife was charged with felony embezzlement.  The parties were living together at that time. Wife testified that although husband said he would "stand by her," he left the marital home on January 23, 1995.  Husband returned to the marital home in May 1995.  Husband testified he returned to effect a reconciliation.

Husband again left the marital home in June 1995.  He testified that he struck his son Christopher after Christopher cursed his brother.  Later that same evening, Christopher went to his aunt's home and refused to return home.  Husband testified that he told wife, "'This is it.  It ain't going to work,'" and then left the marital home.  Wife testified she asked husband to leave after he struck Christopher.

Wife was convicted of embezzlement in United States District Court in February 1996 and was imprisoned until March 1999.  She remained on house arrest until June 1999.  At the

-

time of the equitable distribution hearing, wife was on federal probation.

During wife's confinement, husband had custody of both children for a period of time and then Christopher went to live with his aunt. Husband testified that he paid child support for Christopher from December 4, 1996 to June 7, 1997 in the amount of $25 per week. Husband paid $275 per month for health insurance for the children from February 1996 to December 1997. The premium then was reduced to $78 per month because Christopher was emancipated and removed from the policy. In December 1998, husband testified Robert had reached eighteen years of age and was removed from coverage. During her incarceration, wife did not pay child support and did not make any other contributions for the children's support.

At the time of the hearing, wife was fifty-one years old, and husband was forty-six years old. Wife had one year of college. Wife testified her health was good. Husband testified he had a heart attack a week after the parties separated in January 1995, which was three weeks after wife was arrested for embezzlement.

Wife testified that when the parties separated, they agreed to evenly divide the marital debts,[1] which totaled between $25,000 and $50,000. Husband denied any such agreement.

---

[1] Wife testified that there was a written agreement as to the debts but the writing was not produced.

Wife also testified she was making payment on marital debt to VISA, Montgomery Ward, and Household Beneficial. She stated she was paying restitution of $112,000 on the embezzlement charge at $100 per month. Husband testified he paid over $20,000 in marital debts. He testified $10,385.71 was wife's half share of the debts he paid.

Wife embezzled money from Staunton Employees Credit Union while she was employed there. She testified that at least one year to one year and one-half prior to her arrest, she told husband she was embezzling money from the credit union. Husband testified she told him two to three months prior to her arrest. The charge arose out of wife making loans to herself.

The parties had a joint account at the credit union, in which husband deposited his December 31, 1994 paycheck in the amount of $1,100. Subsequently, the authorities seized that account, and husband never recovered the amount of his paycheck.

Husband became a police officer in 1978 and conceded that no part of his Virginia Retirement System pension accrued prior to the marriage. At the time of separation, husband had seventeen years of qualified service under the Virginia Retirement System.

Husband, at the hearing, argued he should be given credit, against wife's potential share of his pension[2] for the child

_____

[2] The parties had divided all other marital assets by agreement. The pension is the only issue before this Court.

-

support and insurance premiums paid on behalf of the children and the $10,385.71 that represents wife's share of the marital debts he paid.

In awarding wife forty-five percent of the pension, the trial court considered the length of the marriage and the contributions of the parties and addressed the marital debts paid by husband.  The trial court stated, "So what I'm going to suggest is - what I believe is appropriate is 45 percent of the marital share.  That's what I believe is appropriate.  And that takes into account the debt that he - that he got stuck with, that he took on."

A final decree was granted to husband on November 3, 1998, on the grounds of wife's felony conviction of embezzlement and subsequent incarceration for a period exceeding one year pursuant to Code § 20-91(3).

## II.  ANALYSIS

Husband contends the trial court failed to consider wife's economic fault in making the award of equitable distribution.[3] He argues that wife's arrest, conviction, and incarceration impacted the marital estate in three ways:  1) wife's arrest caused his heart attack in January 1995, which resulted in his two-month absence from work, 2) wife did not contribute to the support of the children during her incarceration, and 3) wife's

---

[3] Husband does not dispute that the other statutory factors of Code § 20-107(E) were considered.

-

arrest resulted in the seizure of the parties' joint account at the credit union and the loss of his $1,100 paycheck.

Code § 20-107.3(E)(5) states that the court, in making an award, may consider the circumstances and factors which contributed to the dissolution of the marriage, specifically any grounds of divorce under the provisions of Code § 20-91(1), (3), or (6), or Code § 20-95. Husband correctly cites Aster v. Gross, 7 Va. App. 1, 371 S.E.2d 833 (1988), for the proposition that marital fault can only be considered in an equitable distribution award when the fault has economic consequences to the parties' marital estate.[4] However, we reject husband's contention that wife's arrest, conviction, and subsequent incarceration had an economic impact on the marital estate.

---

[4] We limit our review to whether marital fault had economic consequences on the marital estate. Husband did not raise, nor do we consider, O'Loughlin v. O'Loughlin, 20 Va. App. 522, 458 S.E.2d 323 (1995), in which we held:

> If the evidence of misconduct is relevant under any other factor than subparagraph (5), it may in the judge's discretion be considered when making an equitable award. The trial court may "consider the negative impact of [an] affair on the well-being of the family, see Code § 20-107.3(E)(1) . . . ." Smith[v. Smith], 18 Va. App. [427,] 431, 444 S.E.2d [269,] 273 [(1994)].

Id. at 527-28, 458 S.E.2d at 326.

-

First, there is no evidence that wife's arrest caused husband's heart attack. We could only speculate and surmise as to the causation of such.

It is uncontroverted that upon wife's arrest, husband indicated he would "stand by her." Husband did not relate the separation in January 1995 to wife's pending charges or to any other actions by wife. Husband was told of wife's embezzlement weeks or months prior to January 1995, and, aware of the charges, husband attempted a reconciliation in May 1995. Husband testified that in June 1995, he struck Christopher, and Christopher refused to return home from his aunt's house. When husband went to get Christopher, the aunt said Christopher would not leave. Husband then said to wife, "This is it. It ain't going to work." Husband left the marital home. Husband's testimony did not indicate that wife caused him to leave in June 1995.

Since we have concluded that wife's embezzlement was not a marital fault that led to the dissolution of the marriage, the seizure of the parties' joint account at the credit union is not an economic consequence of the fault as contemplated by Aster.

Clearly, wife made no economic contributions to support the children during her incarceration. Husband contends he is entitled to a dollar-for-dollar credit against wife's share of his pension for the child support and insurance he paid during wife's incarceration.

-

Husband paid child support for Christopher pursuant to a court order and supported Robert at home. He also paid health insurance for the children. Husband's contention ignores the fact that he is obligated to support the children and that he was under court order to support Christopher. See Code § 20-61.

Husband wants this Court to "adopt the position that, when a spouse is incarcerated . . . and leaves the infant children behind, some credit against equitable distribution should be awarded against the spouse left behind with the children . . . ." Husband acknowledges there is no authority to support his position, and we find none. Therefore, we decline husband's invitation to create such an offset.

As earlier discussed, this Court has refused dollar-for-dollar offsets in determining an equitable distribution award. But more basically, a parent's obligation to support a child is quite separate from an equitable distribution award.

As we said, in Lightburn v. Lightburn, 22 Va. App. 612, 472 S.E.2d 281 (1996):

> The legislature enacted Code § 20-107.3 to divide the value of marital property between spouses based upon each spouse's contribution to the acquisition, preservation, or improvement of property obtained during the marriage. Sawyer v. Sawyer, 1 Va. App. 75, 78, 335 S.E.2d 277, 279 (1985); see Roane v. Roane, 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991). "The clear legislative intent embodied in [Code § 20-107.3] is to maintain an appropriate

-

> separation between considerations of child
> or spousal support and considerations of an
> equitable division of marital wealth."
> <u>Williams v. Williams</u>, 4 Va. App. 19, 24, 354
> S.E.2d 64, 66 (1987); <u>Reid v. Reid</u>, 7 Va.
> App. 553, 564, 375 S.E.2d 533, 539 (1989).
> A trial court determines distribution of
> marital property without regard for the
> considerations of spousal support and the
> factors in Code § 20-107.1.  Equitable
> distribution is based on different
> considerations than spousal support.  <u>Stumbo</u>
> <u>v. Stumbo</u>, 20 Va. App. 685, 691, 460 S.E.2d
> 591, 594 (1995).

<u>Id.</u> at 619, 472 S.E.2d at 284.

"Both parents owe a duty of support to their minor children."  <u>Kelley v. Kelley</u>, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994) (citing Code § 20-61; <u>Featherstone v. Brooks</u>, 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979)).  "A custodial parent has no less responsibility to provide support to a minor child than does the noncustodial parent."  <u>Bennett v. Commonwealth, Dep't.</u> <u>of Social Servs., Div. of Child Support Enforcement</u>, 22 Va. App. 684, 692, 472 S.E.2d 668, 672 (1996).  <u>See</u> <u>also</u> <u>Hur v. Dep't. of</u> <u>Social Servs., Div. of Child Support Enforcement</u>, 13 Va. App. 54, 58, 409 S.E.2d 454, 457 (1991) (citation omitted) ("Child support has long been recognized as an obligation owed to the infant child, not the payee parent.  This duty arises from principles of natural law.").

We, therefore, find that husband is not entitled to an offset of the equitable distribution award by the monies he

-

expended for the support of his children.  We believe that the rational of Lightburn equally applies to this factual situation.

Husband also contends he is entitled to a dollar-for-dollar credit for marital debts he paid post-separation.  He argues that the trial court did not give him adequate credit for his curtailment of wife's pro rata share of marital debt after her incarceration.

We have previously held that a spouse is not entitled to a dollar-for-dollar credit for contributions and maintenance of marital property.  Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989); Barker v. Barker, 27 Va. App. 519, 539, 500 S.E.2d 240, 250 (1998).

> Although the separate contribution of one party to the acquisition, care, and maintenance of marital property is a factor that the trial court must consider when making its award of equitable distribution, Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit for such contributions.

von Raab v. von Raab, 26 Va. App. 239, 249-50, 494 S.E.2d 156, 161 (1997).

Similarly, the debts and liabilities of each spouse are one of the factors in Code § 20-107.3 for the court to consider. The trial court expressly indicated it took "into account the debt that [husband] . . . got stuck with . . . ."

"'In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult

-

one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" Anderson v. Anderson, 29 Va. App. 673, 692-93, 514 S.E.2d 369, 379 (1999) (quoting Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990)). "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

In Matthews v. Suzann, 26 Va. App. 638, 496 S.E.2d 126 (1998), we stated:

> In determining an equitable distribution award, the trial court must make "delicate and difficult judgments," Bentz[v. Bentz], 2 Va. App. [486,] 489, 345 S.E.2d [773,] 774 [(1986)], and "weigh[ ] the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). It is precisely "because rights and interests in marital property are difficult to determine and evaluate and competing equities are difficult to reconcile," that "the chancellor is necessarily vested with broad discretion in the discharge of the duties the statute imposes." Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

Id. at 645-46, 496 S.E.2d at 129.

In this case, the trial court considered husband's payment of marital debts in fashioning the distribution of husband's pension. We cannot say that the award of forty-five percent of

-

the pension to wife is an abuse of discretion unsupported by the evidence.  We, therefore, affirm the decision of the trial court.

Affirmed.