COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Senior Judges Willis and Annunziata


ANTHONY GLEN BURNETTE

                                                        MEMORANDUM OPINION[*]
v.        Record No. 1561-04-3                              PER CURIAM
                                                         FEBRUARY 8, 2005
VERA MAE BURNETE


FROM THE CIRCUIT COURT OF WASHNGTON COUNTY
Charles B. Flannagan, II, Judge

(A. Benton Chafin, Jr.; Chafin Law Firm, P.C., on briefs), for
appellant.

(Ralph M. Dillow, Jr.; Dillow & Esposito, on brief), for appellee.


On appeal, Anthony Glen Burnette (husband) contends the trial court erred in requiring him to pay Vera Mae Burnette (wife) one-half of the difference in price between an offer to buy the marital home and the actual sale price to someone else, and one-half of the real estate commission incurred to sell the house. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

The parties married on May 22, 1994. On August 14, 1997, husband filed for a divorce. By interlocutory order entered October 10, 1997, the trial court granted wife "exclusive use of the marital home" and "permitted [husband] to retrieve his personal belongings from the marital home."

On May 4, 1999, appraiser Charles M. Meade filed an appraisal of the marital home performed on behalf of husband. He estimated the value of the home as $270,000.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On April 3, 2000, the parties appeared for depositions at husband's attorney's office and entered into an agreement regarding the sale of the marital home. According to husband's counsel, the parties agreed "[t]hat within a period of seven days ending next Monday at 5:00 p.m. the parties will explore a private sale of the marital residence." If they do not obtain a written offer of purchase, they agreed "to forthwith list the property for sale with a realtor or realtors at a price to be agreed upon by the parties."

On July 24, 2000, the parties appeared before the trial court on wife's motion that the trial court require husband "to join in a conveyance of the marital home to Sonny Wright for the total sum of $295,000.00 cash."[1] Wife's attorney "announced to the Court that Mr. Wright was present and would testify that he would pay the sum of $295,000.00 for the marital home." When wife called Wright to testify, husband "objected to a sale of the marital home . . . since no final decree of divorce had been entered in the case." The trial court sustained husband's objection. Consequently, Wright did not testify. However, wife proffered that Wright would testify that he "was ready, willing and able to purchase the property for $295,000.00 cash." The trial court advised

> counsel that while the court could not at that time require
> [husband] to join in a conveyance of this property to Mr. Wright
> for $295,000.00 cash, if [husband] declined to do so and declined
> to consummate the sale and that if the property later brought less
> than $295,000.00, that the court would consider that fact among
> the other factors considered in Equitable Distribution.

During deposition testimony on September 7, 2000, husband testified, "I didn't want to take [Wright's] $295,000. I wanted to purchase my home, so I made [an] offer of $295,000 straight out." Husband's attorney explained, "When [husband] ultimately realized that Mr. Wright was willing to pay $295,000 and that was somewhat of a firm offer, he said, 'Well, then, I will pay

---

[1] These facts were taken from the trial court's September 16, 2003 decree.

$295,000.'"  Husband indicated that he hired a house inspector who inspected the house and provided him with a report.

On September 15, 2000, the parties again appeared for deposition testimony.  Husband said he had talked with Wright around the time husband made his offer for $295,000 and indicated that he "was hoping [Wright] would go a little higher."  Husband testified that he "agreed to . . . purchase the home," if wife agreed to let him "go in and look at this marital home."  Husband indicated that he had obtained a loan for that amount, but added that he wanted to personally inspect the house to determine whether he wanted to buy it.[2]

By opinion letter dated May 9, 2001, the trial court advised the parties that it had "completed [its] review of the evidence in this case."  It explained its rulings and asked wife's attorney to "prepare an appropriate decree" reflecting its decision.  In that decree, entered on August 21, 2001, the trial court granted husband a divorce.  As to the marital home, the trial court ruled as follows:

> [T]he parties' marital home will be sold and the net proceeds
> equally divided provided the gross sales price is at least
> $295,000.00.  In the event the home sells for less than
> $295,000.00, in the absence of agreement of the parties as to the
> distribution of the net proceeds, the parties shall submit the net
> proceeds information to the Court in order for the Court to
> determine the division between the parties.  If the parties are
> unable to agree upon a private listing contract and sales amount on
> or before July 1, 2001, then Counsel for the parties are appointed
> as Special Commissioners to sell this property in the usual manner
> for partition sales upon posting bond in the amount of
> $300,000.00.

By letter dated May 6, 2002, wife advised the trial court that "the marital home was sold [in April 2002] for the total sale price of $281,900.00, being $13,100.00 less than the $295,000.00 offer which Ms. Burnette had to sell the property to Sonny Wright."  In a May 13,

---

[2] Husband never indicated that the inspector found any problems with the house.

2002 follow-up letter, wife advised the trial court that "the parties were also required to pay a realtor's commission of $16,914.00 because of Mr. Burnette's failure to accept the offer secured by Ms. Burnette from Sonny Wright."

On December 31, 2002, the trial court issued an opinion letter indicating that it reviewed the file and determined that wife "shall be entitled to credit of $6,550.00 representing the loss of sales price due to the refusal to consummate the sale of property to Sonny Wright," as well as "a credit of $8,457.00 representing one-half of the real estate commission unnecessarily incurred." The trial court directed wife's attorney to prepare an appropriate decree.

On March 24, 2003, the trial court conducted a hearing to review the decree prepared by wife's attorney, which addressed the equitable distribution of the proceeds of the sale of the marital home and the apportionment of costs incurred in that sale. In accordance with the December 31, 2002 opinion letter, the trial court held that wife was to receive credits of $6,550 and $8,457. Addressing husband's argument "that the court should not recognize the claims for a reduction of sales price and incurring of a sales commission because there was not an enforceable contract with Sonny Wright," the trial court pointed out "[t]his is not a case for specific performance." It then summarized what took place at the July 24, 2000 hearing at which wife requested that husband join in conveying the property to Wright. The trial court recalled husband's objection to the sale, which it sustained, and wife's unequivocal proffer that "Wright was ready, willing and able to purchase the property for $295,000.00." The trial court also recalled advising husband that it "would consider" his refusal to sell the house to Wright "among the other factors considered in Equitable Distribution" should the house bring less than Wright's offer.

The trial court entered a decree prepared by wife's counsel on September 16, 2003. Husband objected, arguing that the trial court "exceeded and abused its discretion in awarding

[wife] the sums of $6,550.00 and $8,457.00." He argued "there was no evidence heard by the Court of any greater sales price for the marital home than what it actually sold for." He also argued there was no evidence "of the terms of sale proffered by counsel for [wife] so that the Court could make a determination and award of any 'unnecessary realtor commission.'"

Following a hearing on March 31, 2004, the trial court entered another decree on May 25, 2004, detailing how the parties should implement the September 2003 decree. Husband included the same written objections to awarding wife half of the difference in sales price and half of the real estate commission incurred.

DISCUSSION

"'Fashioning an equitable distribution award lies within the sound discretion of the trial judge[,] and that award will not be set aside unless it is plainly wrong or without evidence to support it.'" Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)). In addition, "Virginia law does not establish a presumption of equal distribution of marital assets," and a trial court has discretion to make an equal or disparate division as long as it considered the factors in Code § 20-107.3(E). Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998); see also Torian, 38 Va. App. at 181, 562 S.E.2d at 362 (division of marital share of husband's pension, as with any other asset, rested within the sound discretion of the chancellor, subject to the limitations of Code § 20-107.3(G) and upon consideration of the Code § 20-107.3(E) factors).

Code § 20-107.3(E) provides that "[t]he amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment shall be determined by the court after consideration of" ten specifically described and numbered factors. In addition, the trial court may consider "[s]uch

- 5 -

other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Code § 20-107.3(E)(11).

The parties first appeared before the trial court in August 1997 when husband petitioned for a divorce. A review of the record discloses a history of protracted and contentious litigation between the parties, lasting almost seven years. In April 2000, the parties agreed to sell the marital home, and in July 2000, almost three years after husband filed for divorce, wife presented Wright's offer, which exceeded the 1999 appraisal obtained by husband by $25,000. Husband refused to accept the offer. When wife moved the trial court to order husband to join in selling the property to Wright, husband objected and the trial court sustained his objection. Two months after Wright's offer, husband offered to buy the home for the amount that Wright proposed. Husband admitted he made his offer because "Wright was willing to pay $295,000 and that was somewhat of a firm offer." Husband also conceded in his September 2000 deposition testimony that he "hope[d Wright] would go a little higher." After almost a year of inaction by husband and several deposition hearings at which husband equivocated about his intention to purchase the home, the trial court issued an opinion letter on May 9, 2001 granting husband a divorce and directing that the marital home should be sold. In its opinion letter, the trial court indicated if the house sold for less than Wright's offer, it would consider the difference in making its equitable distribution award. The house sold in April 2002, two years after the parties agreed to sell it and twenty-one months after Wright offered to pay $13,100 more than the actual sales price. The parties were also required to pay a realtor's commission.

Upon review of the record and the circumstances in this case, we cannot say that the trial court abused its discretion in awarding wife half of the difference between Wright's offer and the actual sale price and half of the closing costs and commissions incurred in having to use a realtor to sell the property.

For these reasons, the decision of the trial court is summarily affirmed.

Affirmed.