COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, AtLee and Malveaux
Argued at Norfolk, Virginia


SCOTT ANTHONY OBERLANDER

                                                              MEMORANDUM OPINION* BY
v.        Record No. 1817-17-1                         JUDGE RICHARD Y. ATLEE, JR.
                                                                      JULY 31, 2018
PAMELA KAYE OBERLANDER


             FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                          B. Elliott Bondurant, Judge[1]

             Steven D. Barnette (The Law Office of Steven D. Barnette, P.C.,
             on brief), for appellant.

             Craig W. Sampson (Barnes & Diehl, P.C., on brief), for appellee.


       Scott Oberlander ("husband"[2]) appeals certain decisions of the Circuit Court of

Gloucester County in favor of Pamela Oberlander ("wife").  He argues that the circuit court erred

when it misapplied the equitable distribution statute, and when it denied his motion to continue.

We affirm.

                                      I.  BACKGROUND

       "Upon review, we consider the evidence in the light most favorable to the wife, the

prevailing party."  Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985).  Husband and

wife married in 1989.  They had three children together.  Until 2002, husband was in the United

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Judge B. Elliott Bondurant entered the final decree of divorce and several other
accompanying orders.  Judge Designate R. Bruce Long presided over the trial and made the
substantive decisions at issue in the two assignments of error.

       [2] We use the designations "wife" and "husband" for clarity, recognizing that such terms
actually describe the parties' former, rather than current, legal relationship.

States Navy. In March 2007, husband was arrested and charged with committing violent sexual felonies against two of the parties' children. Husband has not been at liberty since the date of his arrest. Later in 2007, he pled guilty and was sentenced to an active period of 35 years in the penitentiary. As part of his sentence, husband was assessed $3,424 in court costs.

After husband's incarceration, wife assumed sole responsibility for paying the parties' pre-separation debt. Their debts totaled $26,988, and there was a mortgage on the marital residence. During much of the time since husband's conviction, wife worked multiple jobs as well as overtime, in order to keep up with debts and to care for the parties' children.

In 2008, husband and wife executed a deed conveying the marital home from husband and wife to wife solely. Wife argued that, as a result of this deed, the home was her separate property. Husband argued that "the marital residence must be deemed marital property for the purposes of the equitable distribution of the marital estate." The circuit court instructed the parties to brief the issue of the proper classification of the home. Ultimately, the circuit court ruled "that [husband] transferred all of his interest in the former marital residence to [wife] post separation; and that the deed transferring [husband]'s interest in the former marital residence to [wife] constitutes a marital agreement." Thus, the circuit court found, the home was wife's separate property.

At trial, the circuit court awarded wife 50% of the marital share of husband's military pension. Of the parties' $26,988 in debt, the circuit court apportioned 75% to husband, and the remaining 25% to wife. Finally, the circuit court ordered husband to reimburse wife $3,424 for the court costs she paid on his behalf.[3]

---

[3] A lien in this amount was placed against the parties' home. Wife ultimately borrowed money to pay this lien in order to refinance the house.

II. ANALYSIS

"On appeal, we will not overturn a trial court's monetary award of marital property unless we find an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." Fowlkes v. Fowlkes, 42 Va. App. 1, 7, 590 S.E.2d 53, 56 (2003). "We review 'pure questions of law concerning statutory interpretation . . . de novo.'" Anthony v. Skolnick-Lozano, 63 Va. App. 76, 83, 754 S.E.2d 549, 552 (2014) (alteration in original) (quoting Gilliam v. McGrady, 279 Va. 703, 708, 691 S.E.2d 797, 799 (2010)). "Virginia law does not establish a presumption of equal distribution of marital assets." Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998).

> A circuit court, therefore, need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines. To follow such an approach would "undermine the legislature's recognition of 'marriage as a partnership to which each party contributes, *albeit not always equally*, to the well being of the family unit.'" Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 831 (1986) (emphasis in original) (quoting Report of Joint Subcommittee Studying Section 20-107 of the Code of Virginia to the Governor and the General Assembly of Virginia, House Doc. No. 21, at 7 (1982) (expressly rejecting "any presumption in favor of an equal distribution of marital property")).

Robbins v. Robbins, 48 Va. App. 466, 480-81, 632 S.E.2d 615, 622 (2006) (footnote omitted).

A. Substantive Error

Husband's first assignment of error alleges that "[t]he trial court erred in its application of the statutory factors in the equitable distribution statute, Va. Code § 20-107.3, to divide the marital property and debts." In doing so, he alleges, the circuit court "improperly employ[ed] the equitable distribution statute to punish [husband] economically for the break-up of the

- 3 -

marriage."[4]  Husband asserts that the specific errors the circuit court made in applying the equitable distribution statute were its "decision to treat the former marital residence as separate property of [wife]," its "apportionment to [wife] of only 25 percent of the joint marital debt even though she earned far more than [husband] and owned 100 percent of the equity in the marital residence," and its "award to [wife] of a 50 percent marital share of [husband]'s Navy pension."[5]

As a threshold question, wife asks that we decline to consider husband's appeal at all. She points out that Rules 5A:6 and 5A:16 both require that "[a] party filing a notice of an appeal of right to the Court of Appeals shall simultaneously file in the trial court an appeal bond in compliance with Code § 8.01-676.1" and that husband has never filed any such bond.  However, subsection (M) of Code § 8.01-676.1 contains the following exemption to the general rule that security is required in appeals of right:  "When an appeal is proper to protect the estate of a decedent or person under disability, . . . no security for appeal shall be required."  We find that husband is a "person under a disability," pursuant to the definition in Code § 8.01-2(6)(a).  We further find that, while he does not prevail on appeal, husband's appeal nevertheless was "proper to protect [his] estate."  For these reasons, we will consider husband's appeal.  First we address the issue of the marital home, and second the issues of the parties' debt and husband's military pension.

---

[4] The argument that the circuit court "improperly employ[ed] the equitable distribution statute to punish [husband] economically for the break-up of the marriage" was never made to the circuit court.  Rule 5A:18 requires that objections be "stated with reasonable certainty at the time of the ruling."  Husband has not asked us to apply the "good cause" or "ends of justice" exceptions to Rule 5A:18, nor do we find reason to do so.  As such, we do not consider this portion of husband's assignment of error.

[5] As listed in his "Designation of Contents of Appendix and Statement of Assignments of Error," filed with this Court on January 4, 2018, husband's first assignment of error originally contained an additional clause.  That clause asserted that the circuit court erred when it "den[ied] [husband] any marital share in [wife]'s VRS pension."  In his opening brief, however, husband omitted any reference to or argument supporting that clause.  As such, we do not address it.  See Rule 5A:20(e).

*1. Marital Home*

Husband alleges that the circuit court erred when it classified "the former marital residence as separate property of [wife]."[6] In a letter opinion, the circuit court framed the facts and issue this way:

> A deed labeled as a "Deed of Gift" was dated May 9, 2008, executed by [husband], by his attorney in fact, on May 9, 2008, executed by [wife] on May 28, 2008, and recorded on June 2, 2008, all after the last separation of the parties. The deed was recorded as exempt from recordation taxes as a deed between husband and wife, not as a deed of gift.
>
> The question presented is whether or not the deed operated to convert marital property into [wife]'s separate property?

We agree with the circuit court that the deed did operate to convert marital property into wife's separate property.

Code § 20-107.3(A)(2) states, in part:

> All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

---

[6] Although husband assigns error to the circuit court's "decision to treat the former marital residence as separate property of [wife]," and claims that he preserved his argument in his "Brief in Support of his Contention that the Marital Residence Should be Classified as Marital Property," his opening brief contains no substantive argument in support of this portion of his assignment of error. Rule 5A:20(e) requires that an appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." We assume, without deciding, that husband's reference to his "Brief in Support of his Contention that the Marital Residence Should be Classified as Marital Property" sufficed to preserve this issue, notwithstanding his failure to offer argument in his opening brief.

Wife acquired the home by deed after the last separation of the parties, so the home is not presumed to be marital. Wife argued to the circuit court that the deed constituted a marital agreement.

Code § 20-155 describes marital agreements:

> Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in [Code] §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution.

Code § 20-150(1) permits parties to a premarital agreement to enter into contracts with each other concerning "[t]he rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located." We agree that the deed, transferring the home from husband and wife to wife only, was a marital agreement. See Shenk v. Shenk, 39 Va. App. 161, 170-72, 571 S.E.2d 896, 901-02 (2002) (finding that husband's execution of an agreement assigning his interest in businesses he owned jointly with wife to wife alone constituted "a valid a marital agreement under Code § 20-155").

2. *Marital Debt and Husband's Pension*

Husband alleges that the circuit court erred in its "apportionment to [wife] of only 25 percent of the joint marital debt even though she earned far more than [husband] and owned 100 percent of the equity in the marital residence" and its "award to [wife] of a 50 percent marital share of [husband]'s Navy pension." At the time of the circuit court's oral ruling, however, neither husband nor his guardian *ad litem* objected to the ruling concerning the parties' debts or

- 6 -

the award of 50% of the marital portion of husband's pension.[7]  At one point, husband's guardian *ad litem* said generally "Please note our objection."[8]  Husband's guardian *ad litem* endorsed the final decree of divorce "Have Seen and Objected" without any further specificity.

Rule 5A:18 states:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.  A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

Husband did not object "with reasonable certainty at the time of the ruling."  He has not asked us to apply the "good cause" or "ends of justice" exceptions to Rule 5A:18, nor do we find such relief appropriate.  For these reasons, we decline to consider this portion of husband's first assignment of error.

---

[7] Although husband mailed the circuit court his own multi-part, handwritten "Objection to Final Decree of Divorce," this objection was not timely.  Rule 1:1 states, in part, that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."  The circuit court signed the final decree of divorce in this case on October 19, 2017.  Husband's objection was not received by the circuit court until December 1, 2017, after the twenty-one-day period had expired.

[8] The closest husband's guardian *ad litem* came to offering a more specific objection was when he said "Mr. Oberlander is going to have nothing left per month, very little, if anything.  About $700 is going to be paid to his wife out of what is left over from his military retirement, which is going to leave him about $200 a month."  However, husband's guardian *ad litem* made this argument in the specific context of objecting to the requirement of an appeal bond.  See also supra (explaining in more detail issues surrounding appeal bond).

B. Denial of Motion to Continue

Husband's second assignment of error[9] alleges that the circuit court "erred in denying the motion for continuance filed by [husband], where the denial had the effect of depriving [husband] of retained counsel of his choice and a fair opportunity to call forth evidence in his favor." A circuit court's "decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007). Such a decision "will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." Id.

On May 25, 2017, husband moved to continue the case, which was set for June 1, 2017. In support of his motion, husband gave the following grounds:

1. [Husband] is currently incarcerated at the Greensville Correctional Center;

2. [Husband] desires to hire counsel of his own choosing in lieu of having a Guardian and is in the process of setting up meetings with potential attorneys to represent him in this matter;

3. Due to the location of his incarceration it is difficult to schedule times for [husband] tto [sic] meet with potential counsels.

The circuit court denied the motion, which the parties argued by telephone. No transcript of the argument appears in the appendix. At the June 1, 2017 hearing in this case, the judge observed:

---

[9] Husband's "Designation of Contents of Appendix and Statement of Assignments of Error," filed with this Court on January 4, 2018, listed three assignments of error. In his opening brief, however, husband omitted his previously-designated second assignment of error entirely. We therefore do not address that assignment of error. See Rule 5A:20(e) (stating, in part, that an appellant must include in his opening brief "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error"). Our reference to husband's second assignment of error thus refers to that assignment of error originally designated in his "Designation of Contents of Appendix and Statement of Assignments of Error" as husband's third assignment of error.

> Your guardian ad litem . . . filed a motion with the [c]ourt about a week ago asking—I assume at your request, asking that you be given a continuance from today's proceeding in order to hire new counsel. I had a telephone conference with [both parties' attorneys] about that matter and allowed them to present argument on the issue, and after hearing from them, I ruled against the continuance. I denied the motion for a continuance. So we're going to go forward today . . . .

To this, husband's guardian *ad litem* responded: "If the [c]ourt would note for the record my objection to the denial." By order entered the same day of the hearing, the circuit court found:

> that [husband]'s interests are being protected by a very competent Guardian *ad Litem;* that [husband] has had sufficient time to obtain new counsel since his prior counsel was permitted to withdraw; that [husband], the party moving for the continuance, initiated this divorce action over two years ago; that this matter was just recently continued from May 2, 2017, to June 1, 2017; and that the [c]ourt, in its discretion, has determined that [husband] has not provided sufficient cause for the [c]ourt to grant his motion for a continuance.

Husband's guardian *ad litem* endorsed this order "SEEN AND OBJECTED."

Husband asserts that the circuit court's denial of his motion to continue was erroneous for two reasons. First, it "had the effect of depriving [husband] of retained counsel of his choice." Second, it deprived husband of "a fair opportunity to call forth evidence in his favor." As to husband's first reason, we disagree that the denial of his motion erroneously denied husband of his right to retain counsel of his choosing. As to husband's second reason, we find that it was not presented to the circuit court, and pursuant to Rule 5A:18, we decline to address it.

### 1. Denial of Counsel of Husband's Choice

Husband argues that the circuit court's denial of his continuance motion "had the effect of depriving [husband] of retained counsel of his choice." We disagree. On March 7, 2017, the circuit court entered an order granting husband's attorney leave to withdraw as counsel of record. That same day, the circuit court appointed a guardian *ad litem* for husband

- 9 -

in accordance with Virginia Code § 8.01-9, in that the [husband] is a person under a disability, as that term is defined in Virginia Code § 8.01-2(6)(a), and for appointment of a Committee, in accordance with Virginia Code § 53.1-221, *et seq.*, in that [husband] is currently in the custody of Greensville Correctional.

One week prior to the scheduled June 1, 2017 trial, husband moved to continue, claiming that he wished "to hire counsel of his own choosing in lieu of having a Guardian and is in the process of setting up meetings with potential attorneys to represent him in this matter" but that, "[d]ue to the location of his incarceration it is difficult to schedule times for [husband] tto [sic] meet with potential counsels."

Nearly three months had elapsed since the withdrawal of husband's previous attorney. The appendix contains no information about why this was not enough time to hire a new attorney. Nor does the appendix show what efforts husband had undertaken to hire new counsel or how much additional time he would need to do so. Finally, husband gave no explanation for why he waited until only one week before trial to move to continue. A decision denying a motion to continue "will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." Haugen, 274 Va. at 34, 645 S.E.2d at 265. Given the deficiencies underlying husband's motion, we find that the circuit court did not abuse its discretion when it denied that motion. Finding no abuse of discretion, we need not address the prejudice prong of Haugen's conjunctive test.

### 2. *Denial of A Fair Opportunity to Call Forth Evidence in Husband's Favor*

Husband asserts that the denial of his continuance motion deprived him of "a fair opportunity to call forth evidence in his favor." However, this was not an argument he presented to the circuit court. As such, it violates Rule 5A:18. See supra, part II.A.2. "When relief sought in a trial court involves alternative and analytically different legal theories, Rule 5A:18 requires a litigant to *specifically* assert in the trial court the legal theory he seeks to raise on appeal."

<u>Asfaw v. Commonwealth</u>, 56 Va. App. 158, 165 n.4, 692 S.E.2d 261, 265 n.4 (2010). Husband made no claim in his motion to continue that his ability to call forth evidence in his favor was jeopardized. Although there is no transcript of the telephone argument on the motion, the circuit court made no reference, in either its written order or its oral summary of its ruling, to any claim by husband that denial of the motion jeopardized husband's ability to call for evidence in his favor. Finally, husband never raised this argument, either in court or in his written objection on the face of the order.[10] For all of these reasons, we decline to address whether the denial of husband's motion to continue deprived him of "a fair opportunity to call forth evidence in his favor."[11]

### III. CONCLUSION

The circuit court did not abuse its discretion, either in its application of Code § 20-107.3, or its denial of husband's motion to continue.

<u>Affirmed.</u>

---

[10] Nor has husband ever proffered precisely what evidence he was unable to "call forth."

[11] Husband has not invoked the "good cause" or "ends of justice" exceptions to this Rule, nor do we find such relief appropriate.