COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia


TAMMY T. WARE

                                                          MEMORANDUM OPINION* BY
v.       Record No. 1568-17-2                             JUDGE ROSSIE D. ALSTON, JR.
                                                          JULY 31, 2018
SUDARSAN SRINIVASAN


              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                          James S. Yoffy, Judge

              Janipher W. Robinson (Robinson and Greene, on briefs), for
              appellant.

              Kimberly Fitzgerald Austin (Friedman Law Firm, P.C., on brief),
              for appellee.


        Tammy T. Ware (appellant) contends that the Circuit Court for the County of Henrico

(trial court) improperly divided the net proceeds from the sale of the marital residence.

Appellant specifically argues that the trial court erred in its approach to crediting mortgage

payments, late fees on those mortgage payments, and homeowners' association (HOA) fees as

well as when it assessed monthly rent against appellant. We disagree and affirm the trial court.

                                     BACKGROUND

        Suffice it to say that the background of the dispute is rather convoluted and complex.

Appellant and Sudarsan Srinivasan (appellee) were married on March 29, 1996, and together

they have a minor child. The parties filed cross-petitions for divorce in 2013: appellant's

ground for divorce was adultery, and appellee sought a no-fault divorce. As the petitions

proceeded, appellant requested *pendente lite* relief. Accordingly, the trial court issued a

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*pendente lite* order on September 10, 2013, granting appellant "[e]xclusive use and possession of the marital residence" but also requiring her to "pay . . . the mortgage . . . , mortgage insurance, homeowner's insurance, and [HOA fees]." The divorce action and the equitable distribution case were bifurcated, and the trial court issued the final divorce decree on September 28, 2015, awarding appellant a divorce on the ground of a one-year separation after determining that the separation date was July 27, 2013.

The trial court next set forth the framework for equitable distribution.[1] In this regard, the trial court first acknowledged that marital property was to be "divided equally" between the parties and that the marital residence was to be classified as marital property. Moreover, in the final decree of divorce, the trial court ordered that the marital residence be listed for sale by February 19, 2016, and that the net proceeds from that sale be divided equally between the parties. The trial court also directed the parties to "fully comply with the listing agent's [written] recommendations" and to make the marital residence "available for showings."

Appellant objected to the trial court's equal division of the net proceeds of the sale of the marital residence even though she had agreed with the trial court's approach to dividing marital property at trial. Consequently, the trial court issued its January 19, 2016 letter opinion in which the trial court set forth its Code § 20-107.3(E) analysis and reiterated its prior determinations regarding the disposition of the marital estate. To this end, and consistent with the requirements of Code § 20-107.3(E), the trial court observed that appellee is 47 and appellant is 48, that the parties were married 19 years, that they "enjoyed a very good standard of living," and that they both are mentally stable, but physically, appellant suffered from some medical conditions. In addition, as found by the trial court, appellee possessed two master's degrees and has a lucrative

---

[1] References to additional motions and evidence will be confined to those that are relevant to this appeal.

career whereas appellant possessed a high school diploma and was a stay-at-home mother. Appellant assumed this role at the request of appellee as per his cultural tradition. It follows then that appellee made all monetary contributions whereas appellant made most of the nonmonetary contributions. Appellee also provided financial support for his parents in the amount of $1,200-$1,500 per month. The trial court also noted that after appellee lost his job due to no fault of his own, he found a comparable position in New Jersey. Appellant refused to relocate there with the parties' minor child. Consequently, appellee traveled to Henrico, Virginia on the weekends to see appellant and their child. Regarding the marital residence, the trial court found that the date of valuation for the marital residence was May 9, 2013. The marital residence was valued at $430,000, and the mortgage debt was $257,783.47 as of September 15, 2015. Thus, at the time of equitable distribution, the equity in the marital residence was $172,216.53. The trial court articulated its findings in the letter opinion and incorporated the letter opinion into the final decree, which was entered on March 28, 2016.

As directed by the trial court, a realtor, Amy Pryor, was retained, who made recommendations to the parties to prepare the marital residence for listing. One of her recommendations was that the parties "remove all clutter" from the marital residence by July 15, 2016. Pryor emailed and left a hard copy of her recommendations with appellant and also forwarded them to appellant's counsel, appellee, and appellee's counsel on July 6, 2016.

Appellee subsequently filed a petition for a rule to show cause regarding the sale of the marital residence. Appellee alleged that appellant violated the trial court's order to comply with Pryor's written recommendations because appellant failed to "remove all clutter."[2] On

---

[2] In the petition, appellee specifically argued that appellant violated the trial court's July 18, 2016 order, which again required appellant to comply with Pryor's written recommendations. Neither the July 18, 2016 order nor the transcript of the September 6, 2016 hearing were contained in the record. However, the trial court referred to both in its September 29, 2016 order.

September 6, 2016, the trial court heard evidence on the show cause as well as on appellee's motion regarding payment of the mortgage—the final decree was silent as to which party was to assume that obligation. When ruling on the show cause, the trial court did not hold appellant in contempt; rather, the trial court concluded that by the hearing date, appellant was motivated to and had complied with Pryor's recommendation.[3] In its resulting September 29, 2016 order, the trial court reiterated that both parties were required to comply with Pryor's written recommendations and permitted the parties to schedule emergency hearings if either party failed to do so. The trial court also directed appellee to "advance [funds] for all repairs, expenses, and costs for sale recommended by . . . Pryor[,]" noting that appellee would be reimbursed for these advancements. Then, addressing the motion on the mortgage payments, the trial court shifted that responsibility from appellant to appellee, stating that appellee was to be "credit[ed] for [those] payments from the . . . proceeds." The matter was continued to October 11, 2016.

On October 11, 2016, the trial court reviewed the status of the show cause. Pryor testified that she hired a professional to photograph the marital residence. The day before the session was set to occur, appellant notified Pryor that the date that had been arranged for the photo session was no longer convenient. This caused Pryor to cancel the appointment and list the marital residence with just an exterior photograph. Pryor rescheduled the photo session. During the re-scheduled photo session, appellant refused to leave the marital residence despite the photographer's request.

Pryor also attempted to schedule showings of the marital residence. She provided appellant with two possible times—one was a few hours later and the other was the next afternoon. Appellant indicated that both proposed times were inconvenient. Pryor followed up

---

[3] The trial court commented as such during the October 11, 2016 and March 13, 2017 hearings.

with appellant about those dates, and appellant maintained that the times were inconvenient and informed Pryor that she was now ill. Upon hearing that, Pryor asked appellant to step outside of the house so that the potential buyers could view the marital residence, but appellant refused.

At the October 2016 review hearing, the trial court repeated that appellee was going to be credited for mortgage payments he made. In its November 3, 2016 order, the trial court found that "[appellant] purposefully procrastinated and delayed the sale of the [marital residence, and that she] did not cooperate with the realtor regarding the showing . . . nor did she cooperate with the photographer." The trial court ordered appellant not to "prevent or hinder any showings of the [m]arital [r]esidence" and specifically directed her to leave the marital residence during the entire showing. If appellant failed to do so, she would be ordered to vacate the marital residence.

Ultimately, the marital residence was contracted to be sold for $370,000. Appellee and the buyers signed the purchase agreement on February 9, 2017. On February 14, 2017, appellee notified appellant of the purchase agreement and demanded that she vacate the marital residence by March 16, 2017 because of the impending closing date. Appellant did not confirm receipt of the purchase agreement or agree to vacate the property.

Consequently, appellee filed a motion for an emergency hearing on February 23, 2017. The trial court heard the matter on March 13, 2017 and again reviewed the status of the September 2016 show cause.[4] Regarding the emergency hearing, appellant stipulated that she was notified of the purchase agreement; however, she took issue with permanently vacating the

---

[4] Appellant moved to void and set aside the purchase agreement on the ground that the marital residence was sold below its appraised value. Although the trial court had previously found that the appraised value of the marital residence was $430,000, the trial court considered that the marital residence had been listed since September 2016 and that the purchase price had been reduced several times. This explains why the purchase price, $370,000, differs from the appraised value. Ultimately, the trial court did not void or set aside the purchase agreement.

marital residence. Appellant testified that she did not have the resources to facilitate moving out of the marital residence with the parties' minor child.

With regard to the show cause, Pryor testified that she required access to the marital residence to conduct a termite inspection to facilitate the sale of the property. During the termite inspection, appellant left the marital residence, as she was ordered to do, but directed another individual to remain in her place. Pryor also stated that the buyers required access to the marital residence to complete a final walk-through as stated in their addendum to the purchase agreement. Pryor expressed concern that if appellant prevented the buyers from conducting the final walk-through, the buyers would dissolve the purchase agreement. Pryor noted that contractors also needed access to the marital residence to remedy the HOA violations, which were required to be repaired before the marital residence could be sold.

In its subsequent March 22, 2017 order, the trial directed that "[appellant] cooperate with . . . Pryor" and allow her access to the marital residence for those limited purposes. The trial court ordered that appellant leave the marital residence during these times and prohibited her from directing others to be present in her absence. Recognizing the difficulties appellant faced in effectuating her move, the trial court extended the date appellant was to permanently vacate the marital residence to March 27, 2017 and ordered appellee to immediately pay appellant $10,000 "as an advance of her portion of the . . . proceeds." The trial court continued the matter to July 31, 2017 and directed the parties to file proposed calculations detailing how the trial court was to distribute the remaining proceeds.

Appellee filed a second motion for an emergency hearing on March 21, 2017, which the trial court heard the next day. Pryor testified that earlier in the week, she sent appellant a text message stating that contractors were scheduled to be at the marital residence to repair the HOA violations. Appellant did not respond. Pryor and the contractors arrived at the marital residence

on March 21, 2017, but appellant was not present. These necessary repairs required both the garage door and door to the marital residence to be unlocked. Pryor attempted to but ultimately could not gain entry to the inside of the marital residence.

Appellant testified that she never received Pryor's text message. Appellant indicated that on March 21, she had deadbolted the front door while she temporarily left the marital residence. She returned hours later and informed Pryor and the contractors that she had scheduled a meeting with professional movers later that afternoon. Even after this discussion with Pryor and the contractors, appellant refused to keep the garage door and the door to the marital residence open for the contractors to finish their repairs. Ultimately, the contractors could not complete their work; thus, the HOA violations were not cured. Hearing conflicting testimony about whether or not appellant received the text message from Pryor, the trial court asked Pryor to retrieve and produce her cell phone. After examining Pryor's cell phone, the trial court stated on the record that Pryor did send a text message to appellant about the matter. The trial court asked appellant to argue why she should not be held in contempt. Appellant argued that a text message may appear to be transmitted but may not actually be sent. In response, the trial court noted that "[appellant] really has no credibility . . . in this court."

Accordingly, in its April 7, 2017 order, the trial court found appellant

> in contempt for her willful violation of the [trial c]ourt's order regarding the sale of the [m]arital [r]esidence. Specifically, the [trial] court [found] that [appellant] failed to allow the realtor, . . . Pryor, access to the [marital residence] on March 21, 2017 to repair HOA violations. The [trial c]ourt [also found that appellant] has continually delayed the sale of the [marital residence].

The trial court then took "the issue of sanctions for the finding of contempt" under advisement. The trial court reminded appellant that, this time, if she failed to "fully comply" with Pryor's requests, she would be "ordered to report to jail." Appellant was prohibited from employing the "deadbolt . . . during daytime hours" and was required to keep the garage door

and the door to the marital residence open for the contractors. She was also ordered to "permit all other repairs requested by . . . Pryor." The trial court continued the matter to July 31, 2017.

At the July 31, 2017 evidentiary hearing, the trial court was set to hear the parties' proposals regarding the division of the proceeds from the sale of the marital residence. Appellant moved for a continuance claiming appellee had not produced documents that were necessary for her testimony. The trial court ordered appellee to produce those documents and permitted appellant to provide her testimony at a later date.

The court then heard appellee's evidence. Appellee testified that he advanced $10,000 to appellant, paid $2,192.90 in recommended repairs, which he supported with receipts, $36,494.14 in mortgage payments, which he supported with a printed payment history, and $5,618 in HOA fees - that figure included a collection fee of $2,500, a compliance fee of $900, and unpaid HOA fees of approximately $1,500, which he supported with a statement from the HOA. Appellee testified that he was not aware that appellant had stopped paying the HOA fees.

The trial court stated that appellee would be reimbursed for a portion of the HOA fees because the trial court shifted the burden of paying those fees from appellant to appellee in the September 29, 2016 order. Thus, appellee was to be credited, at most, for $4,526 in HOA fees. Appellee then asked the trial court to award him attorney's fees of $14,128, which he supported with an affidavit. Appellee also admitted that late fees incurred on mortgage payments, totaling $3,254, should and would be borne by him. The matter was continued to August 28, 2017 for the presentation of appellee's evidence.

At the recommencement of the July 31, 2017 evidentiary hearing on August 28, 2017, appellee presented his final proposal to the trial court; he compromised by decreasing most of his reimbursement requests. Appellant then advanced her arguments. Arguments relevant to matters on appeal included the following: she contended that she should receive fifty percent

credit for the mortgage payments and that she should not be responsible for HOA fees because she was merely a tenant.

During appellant's argument regarding mortgage payments, the trial court noted appellant had been living in the marital residence "rent-free" and that she was "not going to get credit for any mortgage payments that [appellee] made." During appellant's argument regarding HOA fees, the trial court noted appellee was compromising while "[appellant was] sticking . . . a stick in [appellee's] eye." In its ruling, the trial court concluded that "[appellant] was responsible for delay after delay after delay" regarding the sale of the marital residence, acknowledged that it had held her in contempt, and indicated that it was "going to deal with [the contempt matter] today."

At the hearing and in its written order, the trial court found that the net proceeds totaled $155,404.16 and that the parties were to split that sum equally. The trial court also ruled that appellee be reimbursed according to the trial court's prior orders. Accepting appellee's representations, the trial court then credited appellee $36,494.14 for mortgage payments, $1,096.15 for repairs, $10,000 for the advance, $2,263 for HOA fees, and $5,000 in attorney's fees. After doing so, the trial court stated it "was prepared to assess the full $14,000.00 against [appellant] for her egregious and continued throwing [of] road blocks in the sale of [the marital residence]." Appellee's counsel indicated that the trial court erred when it inadvertently credited appellee with the late fees and for the entire sum of mortgage payments. The trial court recognized its error and credited appellant with $3,154.10 in late fees, $4,508 in mortgage payments because appellant did not live in the marital residence for two months, and $5,556.53 for a support payment appellee missed. Before announcing the parties' corrected respective shares, the trial court addressed the show cause issues. In this regard, the trial court fined appellant $100 which it then suspended. The trial court then announced the parties' share of the

proceeds: appellee's share was determined to be $119,236.74 and appellant's share was set at $36,167.42.[5] Appellant objected and filed a motion for reconsideration which the trial court denied.

Now comes this appeal.

ANALYSIS

I. DIVISION OF NET PROCEEDS

What began as a decision purely rooted in principles of equitable distribution transformed into a determination borne out of equitable distribution and contempt principles.

A. EQUITABLE DISTRIBUTION

We recognize that the "equitable distribution statute 'is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse.'" Robinson v. Robinson, 46 Va. App. 652, 661, 621 S.E.2d 147, 152 (2005) (quoting von Raab v. von Raab, 26 Va. App. 239, 245, 494 S.E.2d 156, 159 (1997)). "Virginia law does not establish a presumption of equal distribution." Judd v. Judd, 53 Va. App. 578, 592, 673 S.E.2d 913, 919 (2009) (quoting Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998)). "It is within the discretion of the [trial] court to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3 require." Rinaldi v. Rinaldi, 53 Va. App. 61, 76, 669 S.E.2d 359, 366 (2008) (quoting Matthews, 26 Va. App. at 645, 496 S.E.2d at 126). "Where an equitable distribution is appropriate, then all of the provisions of Code § 20-107.3 must be followed." von Raab, 26 Va. App. at 245, 494 S.E.2d at 159 (quoting Artis v. Artis, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987)). "In fashioning an equitable

---

[5] Based on the trial court's recitation of the parties' respective credits, appellee's share should be $119,336.74 and appellant's share should be $36,067.42.

- 10 -

distribution award, the trial court must consider each of the statutory factors, but may determine what weight to assign to each of them." Barker v. Barker, 27 Va. App. 519, 537, 500 S.E.2d 240, 248 (1998) (citing Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988)). "[A]ny division or award must be based on the parties' equities, rights and interests in the property." Id. at 535, 500 S.E.2d at 248 (quoting Theismann v. Theismann, 22 Va. App 557, 565, 471 S.E.2d 809, 812, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)). "On appeal, a trial court's equitable distribution award will not be overturned unless [this C]ourt finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Anthony v. Skolnick-Lozano, 63 Va. App. 76, 83, 754 S.E.2d 549, 552 (2014).

Appellant argues that the trial court erred by crediting appellee with fifty percent of the late fees on the mortgage payments, crediting appellee with one-hundred percent of the mortgage and HOA payments, and for denying her a fifty percent credit for the mortgage and HOA payments appellee made. Her argument rests on the following premise: the trial court "gave the parties a one-half interest in the marital residence, which should have made the parties equally responsible for debt service, maintenance[,] and upkeep."

"We review the evidence in the light most favorable to . . . the party prevailing below and grant [him] all reasonable inferences fairly deducible therefrom." Layman v. Layman, 62 Va. App. 134, 135, 742 S.E.2d 890, 890 (2013) (quoting Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999)). We dispose of the first assignment of error as it pertains to the late fees on the mortgage payments straightaway. The record belies appellant's contention. At the August 28, 2017 evidentiary hearing, the trial court inadvertently credited appellee for the late fees he incurred on the mortgage payments. Appellee's counsel made the

- 11 -

trial court aware of its mistake.  Accordingly, the trial court corrected its error and credited

appellant for that entire sum.

Turning to the mortgage and HOA payments at issue, the trial court's failure to divide

these credits according to the trial court's approach to distributing marital property was not an

abuse of discretion on the facts of this case.

Pursuant to the equitable distribution statute, a trial court

> (i) shall determine the legal title as between the parties, and the
> ownership and value of all property, real or personal, tangible or
> intangible, of the parties and shall consider which of such property
> is separate property, which is marital property, and which is part
> separate and part marital property in accordance with subdivision
> A 3 and . . . shall determine the value of any such property as of
> the date of the evidentiary hearing on the evaluation issue.

Code § 20-107.3(A).

After doing so, the trial court is authorized "to apportion and order the payment of the

debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage,

based upon the factors listed in subsection E."  Code § 20-107.3(C).  Such factors include "[t]he

contributions, monetary and nonmonetary, of each party in the acquisition and care and

maintenance of such marital property of the parties," the "debts and liabilities of each spouse

[and] the basis for such debts and liabilities," as well as "[s]uch other factors as the [trial] court

deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary

award."  Code § 20-107.3(E)(2), (7), and (11).  While we recognize that

> the separate contribution of one party to the acquisition, care, and
> maintenance of marital property as by post-separation mortgage
> payments or upkeep, is [merely] a factor that the trial court must
> consider when making its award of equitable distribution, Code
> § 20-107.3 does not mandate that the trial court award a
> corresponding dollar-for-dollar credit for such contributions.

von Raab, 26 Va. App. at 249-50, 494 S.E.2d at 161 (citing Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989)).[6]

The trial court initially ordered appellant to pay both the mortgage and HOA fees pursuant to the *pendente lite* order and granted her exclusive use and possession of the marital residence. The trial court then issued the final decree, awarding the parties a divorce. Contained within the final decree were equitable distribution determinations, some of which pertained to the marital residence. The trial court properly adhered to the steps set forth in the equitable distribution statute by classifying, valuing, and distributing the marital residence. At trial, the trial court indicated that that marital property was to be divided equally and that the marital residence was marital property. The trial court then ordered its sale and noted that the net equity was to be divided equally.[7] Appellant objected to that equal division. The trial court, in its letter

---

[6] This principle has become bedrock in the jurisprudence of this Court. Acknowledging that "[u]npublished opinions of this Court . . . hav[e] no precedential value, [they] are nevertheless persuasive authority." Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012); see, e.g., Ross v. Ross, No. 0748-17-4, 2017 Va. App. LEXIS 331 (Va. Ct. App. Dec. 19, 2017), Dunfee v. Dunfee, No. 0870-10-4, 2010 Va. App. LEXIS 500 (Va. Ct. App. Dec. 28, 2010), Mosteller v. Brooks, No. 2889-07-4, 2008 Va. App. LEXIS 565 (Va. Ct. App. Dec. 23, 2008), Ford v. Ford, No. 0458-08-1, 2008 Va. App. LEXIS 505 (Va. Ct. App. Nov. 18, 2008), Noce v. Noce, No. 2219-05-1, 2006 Va. App. LEXIS 149 (Va. Ct. App. April 11, 2006), Blevins v. Blevins, No. 2297-01-3, 2002 Va. App. LEXIS 281 (Va. Ct. App. May 7, 2002), Banks v. Banks, No. 0414-00-4, 2001 Va. App. LEXIS 452 (Va. Ct. App. July 31, 2001), Stacey v. Stacey, No. 0634-99-1, 1999 Va. App. LEXIS 519 (Va. Ct. App. Sept. 7, 1999), Alberger v. Alberger, No. 2527-98-4, 1999 Va. App. LEXIS 351 (Va. Ct. App. June 15, 1999), and Cline v. Cline, No. 0504-99-3, 1999 Va. App. LEXIS 688 (Va. Ct. App. Dec. 21, 1999).

[7] While designated as marital property, the marital residence was only titled in appellee's name. It is significant that neither party objected to the trial court's classification of and order to list the marital residence for sale. Pursuant to Code § 20-107.3(C), "the [trial] court shall have no authority to order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owned or owed," "absent an agreement between the parties." Taylor v. Taylor, 5 Va. App. 436, 442, 364 S.E.2d 244, 248 (1988) (citing Venable v. Venable, 2 Va. App. 178, 185, 342 S.E.2d 646, 650 (1986)); see Ozfidan v. Ozfidan, No. 1265-14-2, 2015 Va. App. LEXIS 148, at *14 (Va. Ct. App. May 5, 2015) (indicating that it was appropriate, pursuant to Code § 20-107.3, for wife to concede that the trial court improperly ordered the transfer of an IRA to wife as it was not jointly titled). The division or transfer of marital

- 13 -

opinion later incorporated into the final decree, valued the marital residence at $430,000, noted that the mortgage debt was $257,783.47 as of September 15, 2015, and found that the net equity in the marital residence was $172,216.53.

Upon appellee's subsequent motion to determine which party was tasked with the responsibility of paying the mortgage, the trial court expressly shifted that obligation to appellee in its September 29, 2016 order. Also in that order, the trial court required appellee to "advance [funds] for all repairs, expenses, and costs for sale recommended by . . . Pryor." At that point, appellee was also required to pay HOA fees. The trial court derived its authority to impose those obligations on appellee from Code § 20-103. The statute states, in pertinent part, that a trial court

> may, *at any time pending a suit pursuant to this chapter*, in the discretion of such court, make any order that may be proper . . . (vi) for the exclusive use and possession of the family residence during the pendency of the suit, [and] (vii) to preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit.

Code § 20-103(A) (emphasis added). This Court interpreted Code § 20-103 to empower a trial court to order post-separation mortgage payments until the "period of time that is required to adjudicate the rights of the parties under the equitable distribution statute." Taylor v. Taylor, 5 Va. App. 436, 441, 364 S.E.2d 244, 247 (1988). "[T]his [w]as a temporary provision to commence with the filing of the suit and to terminate upon the final adjudication of all of the

---

property includes ordering the sale of such property. See Code § 20-107.3(C) ("As a means of dividing or transferring the jointly owned marital property, the court may . . . order its sale by private sale by the parties, through such agent as the court shall direct, or by public sale as the court shall direct without the necessity for partition.").

The trial court did not have the authority to order that the marital residence be sold based on the express language of subsection C. However, this argument was never brought before the trial court nor is it made on appeal; accordingly, we will not consider this issue. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (noting that pursuant to Rule 5A:18, we will not hear arguments not presented to the trial court).

issues properly raised in the pleadings." Id. But in cases where, as here, the marital residence was sold after the final decree was entered, trial courts were to

> indicate whether the payments should be considered as spousal or child support, or whether it is a provision for the use and possession or preservation of the estate . . . as [t]his designation could be helpful in subsequent proceedings involving partition and sale of the real estate in determining whether a credit should be given to the party making the payment.

Id. at 441-42, 364 S.E.2d at 247.

In this case, the trial court did just that. The trial court separately listed these obligations from appellee's support obligations in its September order; thus, the trial court framed appellee's obligations as "provision[s] for the use and possession or preservation" of the marital residence. Id. at 441, 364 S.E.2d at 247; see e.g., Cline v. Cline, No. 0504-99-3, 1999 Va. App. LEXIS 688 (Va. Ct. App. Dec. 21, 1999). We note that "[a trial] court speaks only through its orders." Smith v. Commonwealth, 23 Va. App. 766, 772, 531 S.E.2d 11, 14 (2000) (quoting Cunningham v. Smith, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964)). This Court "presume[s] that the order, as the final pronouncement on the subject, . . . accurately reflects what transpired." Kern v. Commonwealth, 2 Va. App. 84, 88, 341 S.E.2d 397, 400 (1986).

Turning to appellant's argument regarding the trial court's crediting of these payments, appellant's primary argument is that because the trial court "gave the parties a one-half interest in the marital residence, . . . the parties [should] equally [be] responsible for debt service, maintenance[,] and upkeep." This does not comport with the law of this jurisdiction because "Virginia law does not establish a presumption of equal distribution." Judd, 53 Va. App. at 592, 673 S.E.2d at 919 (quoting Matthews, 26 Va. App. at 645, 496 S.E.2d at 129). "It is within the discretion of the [trial] court to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3 require." Rinaldi, 53 Va. App. at 76, 669 S.E.2d at 366 (quoting Matthews, 26 Va. App. at 645, 496 S.E.2d at 126). In addition, we

- 15 -

presume that "[u]nless a party can show evidence to the contrary, . . . the trial court properly applied the law to the facts." Barker, 27 Va. App. at 543, 500 S.E.2d at 252. Code § 20-107.3(A) directs the trial court to

> determine the nature of all debts of the parties, or either of them, and [to] consider which of such debts is separate debt and which is marital debt. . . . The [trial] court shall determine the amount of any such debt as of the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, and the extent to which such debt has increased or decreased from the date of separation until the date of the evidentiary hearing.

Pursuant to Gilliam v. McGrady, 279 Va. 703, 710, 691 S.E.2d 797, 800 (2010), we recognize that

> no presumption exists with respect to the classification of debts incurred by spouses during marriage, individually or jointly. Instead, traditional rules concerning the allocation of the burden of proof apply. Thus, the party proving that a debt was jointly incurred makes a prima facie showing that the debt is marital, shifting to the party contending otherwise the burden of persuading the court that the debt was separate. Conversely, proof that a debt was incurred by a single spouse makes a prima facie showing that the debt is separate, shifting to the party contending otherwise the burden of persuading the court that it was marital.

Because the trial court ordered appellee alone to make these payments, the burden shifted to appellant to persuade the trial court that the debt was marital. Marital debt is defined as

> (i) all debt incurred in the joint names of the parties before the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, whether incurred before or after the date of the marriage, and (ii) all debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent.

Code § 20-107.3(A)(5). The trial court may designate separate debt as marital if

> a party can show by a preponderance of the evidence that the debt
> was incurred for the benefit of the marriage or family, the court
> may designate the debt as marital.

Code § 20-107.3(A)(4).

While the trial court did not expressly classify the debt as separate or marital and did not determine whether appellee paid these debts from separate funds, we note that the trial court stated that the marital residence was marital property and that the net equity of the proceeds was to be divided equally. In addition, the obligations at issue existed prior to the dissolution of the marriage. The trial court shifted the responsibility of paying these obligations to appellee in its September 29, 2016 order, after the entry of the final divorce decree, and the trial court stated that appellee would be reimbursed for these payments throughout the course of the litigation.

Moreover, while the mortgage and HOA payments benefited both parties by decreasing the amount of mortgage debt encumbering the marital residence, appellant retained exclusive use and possession of the marital residence from the entry of the *pendente lite* order to the date she was permanently ordered to vacate.

The trial court determined the exact value of these credits at the final August 28, 2017 evidentiary hearing. The net equity of the proceeds to be divided was $155,404.16, and appellee was reimbursed $36,494.14 in mortgage payments (two of these payments in the amount of $4,508 were credited to appellant) and $2,263 in HOA payments. Appellant only specifically objected to the amount of these credits at the August 28, 2017 evidentiary hearing. The trial court then announced the parties' respective shares of the proceeds: appellee's was $119,236.74 and appellant's was $36,167.42. Significantly, the trial court found that the delay in the sale of the marital residence was due to the fault of appellant.

- 17 -

Appellant failed to meet her burden and there was evidence in the record to support the trial court's decision to reimburse appellee for these payments. The trial court was not required to reimburse appellee for the entirety of these sums. von Raab, 26 Va. App. at 249-50, 494 S.E.2d at 161 (quoting Code § 20-107.3(E)). We note that the trial court's equitable distribution analysis was also rooted in the sanctions relating to its show cause determinations. The trial court's general application of the equitable distribution scheme thus was reinforced by the trial court's authority to address appellant's continuous contemptuous behavior throughout the course of the proceedings.

## B. CONTEMPT

"Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." Kahn v. McNicholas, 67 Va. App. 215, 225, 795 S.E.2d 485, 490 (2017) (quoting Epps v. Commonwealth, 47 Va. App. 687, 708, 626 S.E.2d 912, 921 (2006) (*en banc*)).

> The power to punish for contempt is inherent in, and as ancient as, [the] courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees, and to preserve the confidence and respect of the people without which the rights of the people cannot be maintained and enforced.

Id. at 226, 795 S.E.2d at 490 (quoting Carter v. Commonwealth, 2 Va. App. 392, 395, 345 S.E.2d 5, 7 (1986)). "[W]e review the exercise of a [trial] court's contempt power under an abuse of discretion standard." Id. (quoting Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007)). The trial court's contempt authority in the context of equitable distribution is derived from Code § 20-107.3(K)(2). That statute states, in pertinent part, that

> the [trial] court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority

to . . . [p]unish as contempt of court any willful failure of a party to comply with the provisions of any order made by the court under this section.

Code § 20-107.3(K)(2).

In the final decree of divorce, the trial court ordered Pryor to make written recommendations to the parties to ready the marital residence for listing. The parties were ordered to comply with those recommendations. Prior to and during the listing process, appellant's actions resulted in delays and protracted litigation. At first, appellant failed to "remove all clutter" as recommended. This inaction resulted in appellee filing a show cause. The trial court found that appellant was not in contempt because by the time the matter was heard, appellant had complied. However, the trial court retained authority over the final disposition of the rule to show cause. The resulting September 29, 2016 order pertained to other matters; the trial court ordered appellee to pay for required repairs, shifted the responsibility of paying the mortgage and other recommended expenses to him, and stated appellee was entitled to reimbursement for these expenses.

Next, there was a review hearing on the show cause. At that hearing, Pryor testified about appellant's interference with the photographing and showing of the marital residence. Appellant's behavior resulted in Pryor cancelling the session, and during the re-scheduled session, appellant refused to leave the marital residence when the photographer requested. Appellant also prevented Pryor from showing the marital residence, stating that the suggested times were inconvenient and denying Pryor's request to step out to allow the prospective buyers an opportunity to view the marital residence. Even in light of these actions frustrating the process of the disposition of the marital residence, the trial court did not find appellant in contempt in the November 3, 2016 order. The trial court, however, did acknowledge that "[appellant] purposefully procrastinated and delayed the sale of the [marital residence]."

- 19 -

Then, after appellee and the prospective buyers entered into a purchase agreement for the marital residence, appellant did not respond to appellee's notification of the agreement nor to his request that she permanently vacate the marital residence. This culminated in appellee's filing for an emergency hearing. At the emergency hearing, the trial court again reviewed the show cause. Regarding the emergency hearing, appellant stipulated she received notice but stated challenges she faced in vacating the marital residence. Regarding the show cause, Pryor testified that she required access to the marital residence for three purposes: completing a termite inspection, conducting a final walk-through, and curing HOA violations. Appellant was not present in the marital residence during the termite inspection but directed another individual to remain there. Although again not finding appellant in contempt, the trial court ensured Pryor's access to the marital residence for those purposes in its March 22, 2017 order.

Subsequently, Pryor text messaged appellant about remedying the HOA violations. Appellant failed to respond. The contractors arrived to begin their work but were not able to finish the repairs because appellant refused to keep the garage and doors to the marital residence open. Consequently, appellee filed for a second emergency hearing. The trial court found appellant in contempt in its April 7, 2017 order "for her willful violation of the [trial c]ourt's order regarding the sale of the [m]arital [r]esidence" because she failed to provide the contractors with the requisite access. The trial court also found that she "has continually delayed the sale of the [marital residence]." The trial court took the issue of sanctions under advisement.

At the first evidentiary hearing on July 31, 2017, appellee presented his initial proposal for equitable distribution, highlighting the sums he had advanced during the pendency of the divorce action while also noting credits that the parties should receive while they were separated.

Finally, at the final evidentiary hearing on August 28, 2017, the trial court resolved both equitable distribution and contempt matters. Appellee presented his final proposal for equitable

distribution, decreasing his requests for credit. Appellant then presented her suggestion for equitable distribution essentially advancing a pure 50/50 split of the proceeds from the sale of the marital residence. The trial court calculated the parties' share of the proceeds, listing specific sums each party was to be credited, including mortgage payments and HOA fees.[8] In conjunction with these calculations, the trial court addressed the issue of contempt sanctions. The trial court assessed a $100 fine against appellant which it then suspended.

The trial court issued these rulings and entered these orders in full view of the role appellant played in delaying the sale of the marital residence. Acting within its authority pursuant to Code § 20-107.3(K)(2), the trial court reimbursed appellee for portions of the mortgage and HOA payments he made. Thus, we cannot say the trial court abused its discretion pursuant to its contempt powers.

## II. ASSESSING MONTHLY RENT AGAINST APPELLANT

Appellant also contends that the trial court improperly assessed monthly rent against appellant. Appellant mischaracterized the trial court's statements. While the trial court commented that appellant lived in the marital residence "rent-free" from the date of the final decree to the date she was ordered to vacate, the trial court did not assess rent against her. This becomes clear when considering the transcripts of the October 11, 2016 hearing and the August 28, 2017 evidentiary hearing.

At the October 11, 2016 hearing, appellant admitted on direct examination that while living in the marital residence, she never paid rent and no longer paid the mortgage. At the August 28, 2017 hearing, the trial court attempted to assign two mortgage payments to appellant.

---

[8] Appellee's counsel informed the trial court that its calculations were not entirely correct. At the trial court's direction, appellee's counsel recalculated the parties' share of the proceeds. Ultimately, these recalculations served as the trial court's basis for the distribution of the proceeds from the sale of the marital residence.

Appellee's counsel informed the trial court that appellant did not live in the marital residence for those two months and requested that the trial court credit appellant for both of those mortgage payments. The trial court did so. Thus, the record directly contradicts appellant's argument; the trial court never assessed monthly rent against appellant for time she did not live in the marital residence.

### III. Attorney's Fees

Both parties requested attorney's fees on appeal. We are conscious of the fact that appellant filed several appeals with this Court resulting in increased litigation costs for appellee. While indeed there are some equities in awarding fees to appellee, we choose to decline an award of fees and costs because a portion of appellant's appeal "addressed appropriate and substantial issues." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).

### Conclusion

Considering the evidence in light of equitable distribution and contempt principles, the trial court did not abuse its discretion in calculating the distribution of the proceeds from the sale of the marital residence. In addition, the trial court did not assess monthly rent against appellant for months she did not live in the marital residence. Finally, considering the "appropriate and substantial" issues on appeal, we decline to award attorney's fees and costs.

<u>Affirmed.</u>